UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2016 MSPB 28

Docket No. DC-1221-11-0466-A-1

**Elissa Rumsey,**

**Appellant,**

**v.**

**Department of Justice,**

**Agency.**

July 21, 2016

Robert A. Burka, Esquire, Washington, D.C., for the appellant.

Kristen Bucher Hahn, Esquire, and Morton J. Posner, Esquire, Washington, D.C., for the agency.

Thomas Devine, Esquire, Washington, D.C., for the amicus curiae, Government Accountability Project.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1    The appellant has petitioned for review of an addendum initial decision that awarded her $2,801 in costs and $7,084 in attorney fees to one of her three attorneys but denied any attorney fees for the services of her two other attorneys. For the reasons discussed below, we GRANT the petition for review, VACATE the addendum initial decision insofar as it applied 5 U.S.C. § 7701(g) to this proceeding, AFFIRM the addendum initial decision insofar as it found that attorney fees were due for the legal services of the DiMuroGinsberg law firm,

AFFIRM the addendum initial decision insofar as it found that no attorney fees were due for the legal services of Beth Slavet, REVERSE the addendum initial decision insofar as it found that no attorney fees were due for the legal services of Robert Burka, and MODIFY the addendum initial decision concerning the amount of attorney fees and costs awardable to the appellant. We FORWARD to the Washington Regional Office the appellant's allegation that she is entitled to a higher performance appraisal and award for adjudication as a petition for enforcement.

## BACKGROUND

¶2        The appellant is a GS-14 Compliance Monitoring Coordinator in the Office of Juvenile Justice and Delinquency Prevention (OJJDP). *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 2 (2013). One of the functions of OJJDP is to award grants to organizations and then ensure that they use the grant money in compliance with the terms of the grant. *Id.* The appellant disclosed, inter alia, her belief that one of the grantees submitted fraudulent data in connection with its program compliance and that agency managers were covering up this fraud. *Id.*, ¶¶ 17-19. Thereafter, the appellant filed an individual right of action (IRA) appeal in which she alleged that the agency reprised against her in a variety of ways, including, inter alia, giving her improperly low performance ratings, conducting a reorganization that moved many of her job duties to other employees, cancelling her telework agreement, and pressuring her to accept a detail. *Id.*, ¶ 3. The administrative judge denied the appellant's request for corrective action in its entirety. *Id.*, ¶¶ 4‑5. After the appellant filed a petition for review, the Board determined that, while a "close case," the limited evidence in the record was insufficient to find that the agency met "its burden of proving by clear and convincing evidence that it would have given the appellant the same rating absent any whistleblowing." *Id.*, ¶¶ 35-38. The Board also found that, although the agency presented evidence in support of its position, the Board was

"not left with the firm belief that the agency would have cancelled the appellant's telework agreement" absent her protected activity.[1]  *Id.*, ¶ 34.  The Board ordered the agency to take corrective action regarding the cancellation of the appellant's telework agreement with the agency and her 2007 performance rating.  *Id.*, ¶ 49.

¶3        The appellant subsequently filed a motion for attorney fees in which she sought fees for all three of the attorneys who had represented her:  Beth Slavet, who represented the appellant before the Office of Special Counsel (OSC), as well as through the hearing in the IRA appeal; the DiMuroGinsberg law firm, which represented the appellant from June through July 2011, including at the hearing; and Robert Burka, who represented the appellant on petition for review to the Board and in this attorney fee (addendum) proceeding.  Attorney Fee File (AFF), Tab 1.  In her addendum initial decision, the administrative judge granted attorney fees of $7,084, which was limited to the representation by the DiMuroGinsburg law firm, plus costs of $2,801.  AFF, Tab 16, Addendum Initial Decision (AID).  The administrative judge found that no award of attorney fees should be made for the legal services of either Ms. Slavet or Mr. Burka.  AID at 5‑9.  The administrative judge further found that the lodestar amount (hourly rate multiplied by the number of reasonable hours) for the DiMuroGinsburg law firm, as well as awardable costs, must be reduced by 80% because of the appellant's limited degree of success in her IRA appeal.  AID at 9‑11.

¶4        In a timely filed petition for review, the appellant argues, among other things, that she is entitled to an award of attorney fees for the work performed by all three of her lawyers and that her attorney fees award should not have been

---

[1] Although the Board ordered the restoration of the appellant's telework agreement, her telework agreement already had been restored in 2008 as the result of the resolution of a grievance, 2 years before she filed her IRA appeal.  Attorney Fee File, Tab 8 at 23‑24.

reduced by 80%.[2] Petition for Review (PFR) File, Tab 3. The agency responded in opposition to the petition for review, and the appellant replied to the agency's response.[3] PFR File, Tabs 7‑8.

## ANALYSIS

### The appellant is not entitled to an award of attorney fees for Ms. Slavet's legal services.

¶5 Before addressing whether the two other attorneys who represented the appellant should be entitled to an award of attorney fees, we are presented with the threshold issue of whether attorney fees should be awarded to Ms. Slavet. As mentioned above, the administrative judge found that an award of attorney fees for Ms. Slavet's legal services was not warranted. AID at 7-9. The appellant submitted copies of Ms. Slavet's invoices, but stated that she was engaged in a fee dispute with Ms. Slavet and did not vouch for the reasonableness of the itemized charges listed on the invoices. AFF, Tab 7 at 4-5; Tab 11 at 4‑5, 7‑8. In fact, the appellant acknowledged that much of Ms. Slavet's work was "excessive" and that her invoices were "full of meritless, unrecoverable, and frivolous legal work." AFF, Tab 13 at 23.

¶6 For the reasons stated by the administrative judge, AID at 7‑9, Ms. Slavet's invoices do not adequately document the legal services provided,

---

[2] The Government Accountability Project has filed an amicus brief in support of the petition for review in which it argues that affirming the initial decision would have a chilling effect on the exercise of rights under the Whistleblower Protection Act, in that whistleblowers will "lose by winning if only token compensation is provided for six figure litigation burdens." Petition for Review (PFR) File, Tab 6 at 2.

[3] The appellant filed a motion for leave to file a supplemental pleading. PFR File, Tab 10. The Clerk of the Board granted the appellant's motion and accepted into the record both the supplemental pleading and the agency's response. PFR File, Tabs 13‑14, 17. The Clerk also issued a Briefing Order requesting additional argument from the parties on certain issues, and both parties and the amicus curiae have provided briefs. PFR File, Tabs 16, 18‑21.

and she correctly found that the Board has no factual basis to conclude that any amount of fees claimed were reasonable.  Because the appellant has not met her burden of proving by preponderant evidence that the fees were reasonable, no fees are due, and, in light of that, we need not reach the agency's argument that an award of fees would violate conflict of interest laws at 18 U.S.C. § 205 to the extent that Ms. Slavet later became a Federal employee.  We now will address the appellant's other attorneys.

Because the controlling legal authority for this proceeding is 5 U.S.C. § 1221(g)(1)(B), it is the appellant, and not her attorney, who is entitled to an award of attorney fees.

¶7      It is well settled that attorney fees cannot be awarded against the Federal Government unless specifically authorized by a statutory waiver of sovereign immunity.  *Brenner v. Department of the Interior*, 119 M.S.P.R. 399, ¶ 5 (2013); *see Applegate v. United States*, 52 Fed. Cl. 751, 759 (2002), *aff'd*, 70 F. App'x 582 (Fed. Cir. 2003).  Two of the statutes that authorize the Board to award attorney fees are 5 U.S.C. § 7701(g)(1), which applies when the appellant is a prevailing party in an appeal under 5 U.S.C. § 7701 and an award is warranted in the interest of justice, and 5 U.S.C. § 1221(g)(1)(B), which applies when the Board orders corrective action in a whistleblower appeal to which 5 U.S.C. § 1221 applies.  5 C.F.R. § 1201.202(a)(1), (4).  Subsection (g)(1)(B) of section 1221 applies in this case because the Board ordered corrective action in the merits proceeding based on its finding of a prohibited personnel practice.

¶8      In analyzing the motion for attorney fees and costs in this appeal, the administrative judge cited both 5 U.S.C. §§ 7701(g) and 1221(g).  AID at 1.  The analysis of an attorney fee motion under 5 U.S.C. § 7701(g)(1) and 5 U.S.C. § 1221(g) is similar in several respects.  Both require, for example, that the movant have been a prevailing party, which is not disputed in this case.  There are at least two significant differences, however. First, an award of attorney fees under 5 U.S.C. § 7701(g)(1) must be "warranted in the interest of justice."  No

such requirement exists for an award of attorney fees under 5 U.S.C. § 1221(g)(1)(B) as that provision states, "[c]orrective action shall include attorney's fees . . . ." A second difference relates to the person entitled to receive such an award, i.e., whether it is the party or the attorney who is entitled to receive attorney fees. The text of 5 U.S.C. § 7701(g)(1) does not address this issue directly; it merely states that the Board "may require payment by an agency involved of reasonable attorney fees incurred by an employee . . . ." The Board has held, however, that it is the attorney, rather than the appellant, who is entitled to receive attorney fees under section 7701. *Chin v. Department of the Treasury*, 55 M.S.P.R. 84, 87 n.2 (1992); *see Bonggat v. Department of the Navy*, 59 M.S.P.R. 175, 180 (1993). In contrast, section 1221 provides unambiguously that "the agency involved shall be *liable to the employee*, former employee, or applicant for reasonable attorney's fees and any other reasonable costs incurred."[4] 5 U.S.C. § 1221(g)(2) (emphasis added). The administrative judge therefore erred in relying on *Jensen v. Department of Transportation*, 858 F.2d 721 (Fed. Cir. 1988), in ruling that it is the attorney who is legally entitled to an award of attorney fees in an IRA appeal, as *Jensen* arose under 5 U.S.C. § 7701(g), not 5 U.S.C. § 1221(g).

The appellant is entitled to an award of attorney fees for the legal services of the DiMuroGinsberg law firm and for Mr. Burka's legal services.

¶9        Neither party has objected to the administrative judge's finding that the appellant was entitled to an award of attorney fees for the legal services of the

---

[4] Subsection (g)(2) applies to all cases in which the Board's decision is based on a finding that the agency has committed a prohibited personnel practice. Subsection (g)(1)(B) is limited to a subset of those cases, ones in which the Board orders corrective action in an IRA appeal after finding that the agency has committed a prohibited personnel practice. *See* 5 U.S.C. § 1221(a), (e)(1). The provision in subsection (g)(2) that the agency shall be liable "to the employee" for reasonable attorney fees thus applies to all cases under subsection (g)(1)(B).

DiMuroGinsburg law firm. AID at 9. We agree with the administrative judge's finding and see no reason to disturb it. However, the administrative judge found that an award of attorney fees for Mr. Burka's legal services was not warranted. AID at 5-7. As discussed below, we disagree with the administrative judge's finding and conclude that fees are due for Mr. Burka's services.

¶10 The appellant and Mr. Burka gave consistent accounts of the oral agreement under which Mr. Burka agreed to represent the appellant before the Board following the issuance of the initial decision in the merits proceeding: (1) he promised her that his work on the petition for review would cost her nothing; (2) if his efforts on the appellant's behalf were successful, he would apply for an award of attorney fees; (3) he would give the appellant any fees he was awarded up to the amount she already had paid to the other attorneys; (4) the same understanding applied to any services Mr. Burka might provide in connection with any addendum proceeding after the Board ruled on the petition for review; and (5) if any funds for Mr. Burka's services were left over, they would be donated to charity after consultation with the appellant. AFF, Tab 4 at 6; Tab 6 at 9-10. Mr. Burka agreed to these arrangements "to ameliorate [the appellant's] undoubtedly difficult financial situation caused by paying various counsel and litigation support vendors approximately $140,000." AFF, Tab 4 at 6. Both the appellant and Mr. Burka characterized their arrangement as a 100% contingency fee. *Id.*; AFF, Tab 6 at 10.

¶11 In finding that the appellant was not entitled to an award of attorney fees for Mr. Burka's legal services, the administrative judge cited *Krape v. Department of Defense*, 97 M.S.P.R. 430, ¶ 12 (2004), and *Gensburg v. Department of Veterans Affairs*, 85 M.S.P.R. 198, ¶ 13 (2000), for the proposition that the agreed-upon rate ($0 in this case) is presumed to be reasonable, and that this presumption can be rebutted only by convincing evidence that the agreed‑upon rate was not based on marketplace considerations and that the attorney's rate for similar work was customarily higher, or by showing that the

attorney agreed to such a rate only because of the employee's reduced ability to pay. AID at 5-6. The administrative judge found that the presumption was not rebutted because Mr. Burka agreed not to charge the appellant any attorney fees. AID at 6. On review, the appellant argues that both prongs of the legal doctrine enunciated in *Krape* and *Gensburg* apply in this case.

¶12  As discussed above, the fee arrangement in question was essentially for a 100% contingency fee, i.e., no fee unless the appellant became a prevailing party, in which event Mr. Burka would seek an award of attorney fees at market rates. Because liability for attorney fees and costs under 5 U.S.C. § 1221(g)(1)(B) is to the appellant and not to the attorney, it is irrelevant that the attorney elected not to retain any of the fees awarded. The record also shows that Mr. Burka, who retired in 2010 after practicing law for nearly 40 years, albeit in a different area of legal expertise, routinely billed for the provision of legal services at a rate of $850 per hour. AFF, Tab 4 at 4. Thus, his customary rate for legal services was higher than the zero rate he charged the appellant. Finally, as noted above, Mr. Burka agreed to the fee arrangement because of the appellant's "undoubtedly difficult financial situation." *Id*. at 6. In sum, we find that the appellant has presented convincing evidence that the 100% contingency rate agreed to by the appellant and Mr. Burka was due to her reduced ability to pay, not based on marketplace considerations, and Mr. Burka's customary rate was higher. *See Krape*, 97 M.S.P.R. 430, ¶ 12; *Gensburg*, 85 M.S.P.R. 198, ¶ 13.

¶13  During the adjudication of the appellant's petition for review, the Board issued a Briefing Order on the issue of whether fees were "incurred" for Mr. Burka's legal services within the meaning of 5 U.S.C. § 1221(g)(2). PFR File, Tab 13. Upon reflection, we conclude that attorney fees were incurred for Mr. Burka's legal services. Mr. Burka and the appellant had "an express or implied agreement that the fee award would be paid over to the legal representative." There is no requirement that the attorney retain attorney fees for

himself.[5]  Thus, we conclude that the appellant is entitled to an award of attorney fees for Mr. Burka's legal services under 5 U.S.C. § 1221(g)(1)(B).

Calculation of the lodestar.

¶14    The starting point for determining a reasonable attorney fee award in a case where the prevailing party did not obtain all the relief requested is to take the hours reasonably spent on the litigation multiplied by a reasonable hourly rate, which is the "lodestar" the Board uses in determining the fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Guy v. Department of the Army*, 118 M.S.P.R. 45, ¶ 8 (2012).  The initial calculation should exclude hours for which the prevailing party failed to provide adequate documentation, as well as hours that were not reasonably expended.  *Hensley*, 461 U.S. at 433-34; *Guy*, 118 M.S.P.R. 45, ¶ 8.

¶15    Neither party has objected to the lodestar determined by the administrative judge for the DiMuroGinsburg law firm, $35,419.44, representing 202.45 hours of billable time (attorney time billed at $350 per hour and paralegal and clerical time billed at $75 per hour).  AID at 9; AFF, Tab 5 at 6.  We therefore turn to the lodestar amounts for Mr. Burka.

¶16    The burden of establishing the reasonableness of the hours claimed in an attorney fee request is on the party seeking fees.  *Casali v. Department of the Treasury*, 81 M.S.P.R. 347, ¶ 13 (1999).  The Board usually finds an attorney's customary billing rate to be his "reasonable" rate.  *Id.*, ¶ 9.  The customary billing rate may be established by showing the hourly rate at which the attorney actually

---

[5]  *See Astrue v. Ratliff*, 560 U.S. 586, 589, 597-98 (2010) (awarding attorney fees under Equal Access to Justice Act where the fee award did not ultimately go to the attorney, but benefitted the party, because she "owed the Government a debt that predated the District Court's approval of the award"); *National Treasury Employees Union v. Department of the Treasury*, 656 F.2d 848, 853 (D.C. Cir. 1981) (stating that, "Lawyers may, if they wish, voluntarily donate some or all of their fees to charity, or even to their employers, just as they may spend their other monies as they please.").

billed other clients for similar work during the period for which the attorney seeks fees or by evidence of the market rate for similar work in the community. *Id.* The relevant market rate for the determination of the reasonableness of an attorney fee request is the forum for the litigation, which in this case is the Washington, D.C. metropolitan area.

¶17 Mr. Burka stated that he has been engaged in the practice of law since 1971 in both the private sector and in Federal Government positions and that he is currently "retired," but has continued to practice on a voluntary, nonfee basis. AFF, Tab 4 at 4. He stated that his published rate for the provision of legal services was $850 per hour when he retired as an active partner in his law firm in 2010. *Id.* at 6. He further stated that his *Laffey* rate[6] was $495 per hour in 2011-2012, which he indicated would compare favorably to the rates he routinely charged commercial clients. *Id.* Mr. Burka acknowledged that this is the first case he has ever litigated before the Board, although he has litigated administrative appeals in other forums, as well as in the U.S. Supreme Court and several Federal courts of appeal. *Id.* at 5. He also stated that he has experience in cases involving disputes over attorney fees. *Id.* at 5‑6.

---

[6] The *Laffey* Matrix is a schedule of hourly rates allowed by the U.S. District Court for the District of Columbia in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371, 374-75 (D.D.C. 1983), *reversed in relevant part*, 746 F.2d 4, 24-25 (D.C. Cir. 1984) (holding that an attorney's customary billing rate, and not a matrix purporting to reflect the "true value" of the attorney's services, is the appropriate starting point for determining the reasonable hourly rate), *overruled by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (holding that the prevailing market rate is the appropriate basis for calculating fees for private attorneys who represent individuals "at reduced rates reflecting non-economic goals"). It purports to show the prevailing market rates for attorneys in the District of Columbia and is prepared and maintained by the United States Attorney's Office for use in District of Columbia cases where a statute permits the prevailing party to recover "reasonable" attorneys' fees. *Caros v. Department of Homeland Security*, 122 M.S.P.R. 231, ¶ 9 n.5 (2015).

¶18     Establishing a reasonable hourly rate for Mr. Burka in the customary way—by showing the hourly rate at which he actually billed other clients for similar work during the period at issue—is not feasible, both because he was semi-retired at the time in question and because, as he conceded, this is the first time he ever practiced before the Board.  As noted above, though, Mr. Burka has billed clients at the rate of $850 per hour, and he has extensive experience in complex legal matters.   However, because Mr. Burka previously has never litigated a Board appeal, we find it is not appropriate to apply the *Laffey* Matrix rate of $495 per hour as a reasonable one.   *See Brooks v. Department of Transportation*, 33 M.S.P.R. 399, 402 (1987) (determining that the *Laffey* Matrix was inapplicable under the circumstances and that, instead, use of the lodestar in computing the amount of a reasonable attorney fee award was proper).   We believe that, under the unique circumstances of this case, $350 per hour, the rate charged by one of the appellant's other experienced legal counsel, the DiMuroGinsburg law firm (also practicing in the Washington, D.C. area), is the reasonable hourly rate.   *See Caros v. Department of Homeland Security*, 122 M.S.P.R. 231, ¶¶ 9-15 (2015) (finding that, notwithstanding the *Laffey* Matrix, the appellant's attorney was entitled to fees at a reasonable hourly rate of $250, not the requested $510, for legal work performed in the Washington, D.C. metropolitan area); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543‑44 (2010) (explaining the relevant factors to take into account when making a lodestar calculation; the superior performance of an attorney is considered only in "rare" and "exceptional" circumstances).

¶19     Having determined that $350 is a reasonable hourly rate for Mr. Burka, we next turn to the number of hours he reasonably expended on this litigation.  There are two distinct periods of legal representation involved here:  preparing the petition for review of the merits decision; and prosecuting the present motion for attorney fees, including pleadings on review.  As to the former period, Mr. Burka stated that he spent 152.65 hours preparing the petition for review, but he

proposed that, in light of his unfamiliarity with Board law and the case record, eliminating approximately one-third of the total hours spent on that document would be reasonable. AFF, Tab 4 at 7. The agency agreed that 100 hours of work was reasonable. AFF, Tab 8 at 17. Accordingly, the lodestar figure for Mr. Burka's preparation of the petition for review in the merits proceeding is $35,000 (100 hours x $350/hour).

¶20 As to the latter period, it is well settled that an attorney's time reasonably spent on an addendum proceeding such as a motion for attorney fees is compensable when an award of fees for the merits proceeding is in order. *See, e.g.*, *Guy*, 118 M.S.P.R. 45, ¶ 23; *Driscoll v. U.S. Postal Service*, 116 M.S.P.R. 662, ¶ 30 (2011). Mr. Burka has provided evidence that he has devoted 289.3 hours to this addendum proceeding: 99.15 hours in the regional office proceeding; 92.5 hours preparing the petition for review; 36.5 hours in preparing a reply to the agency's response to the petition for review; and 61.15 hours subsequent to that, including responding to the Board's Briefing Order. AFF, Tab 13 at 26-27; PFR File, Tab 3 at 25, 64, Tab 8 at 14, 20, Tab 20 at 22.

¶21 After closely scrutinizing the submitted evidence of the hours spent and the work product produced (totaling 16 pleadings)[7] by Mr. Burka during this addendum proceeding, we divided our inquiry into an additional two periods:

---

[7] Those pleadings consist of the following: AFF, Tabs 1 (motion for extension of time); 3 (motion for attorney fees); 4-6 (declarations of Robert Burka, Jonathan Mook, and the appellant, with exhibits); 7, 11 (supplements to motion for attorney fees, with exhibits); 12 (duplicate and legible copies of both Tabs 7 and 11, except for addition of Exhibit C and one email in Exhibit B); 13 (reply to the agency's response); PFR File, Tabs 1 (request for extension of time; declaration of Mr. Burka); 3 (petition for review, with appendices); 8 (reply to the agency's response to the petition for review); 10 (motion for leave to file supplemental pleading); 14 (supplemental pleading); 18 (response to the Board's Briefing Order, with exhibits); and 20 (second response to the Briefing Order). *See* Appendices B-C, attached to this Opinion and Order (listing in detail all the pleadings filed by Mr. Burka during the addendum proceeding, including exhibits and appendices).

(1) the time before the Board issued its August 26, 2015 Briefing Order at PFR File, Tab 13; and (2) any time thereafter. We conclude, based on our review of the pertinent evidence, that some of the hours spent on the addendum proceeding must be reduced.

¶22    In the process of reviewing the attorney fees petition, we created a seven‑page table that reflects Mr. Burka's requested hours during the addendum proceeding, providing a description of categories of work he performed, including: his communications with the appellant; his communications with others (usually, the administrative judge, other attorneys, and/or the Government Accountability Project); his general research; and his drafting and completion of written products (pleadings). *See* Appendix A (attached to this Opinion and Order). In reviewing Mr. Burka's final "Summary of Billable Hours," PFR, Tab 20, Exhibit A, we also noticed instances wherein he reported working on several tasks simultaneously, which is labeled on the table as "Combined Tasks." We also created an outline of all of Mr. Burka's pleadings in the addendum proceeding, at the initial and petition for review levels of litigation, which we compared against the requested billable hours. *See* Appendices B-C (attached to this Opinion and Order). The last, or far right, of the columns on the table at Appendix A shows a breakdown of the hours (in bold) we awarded to Mr. Burka, after deducting the hours dealing with matters discussed below.

¶23    We find, for instance, that during the pre-Briefing Order period, Mr. Burka should not be entitled to fees for the conversations or emails he had with Ms. Slavet's lawyer or for the pleadings (or sections of pleadings) they drafted during the addendum proceeding in their efforts to obtain fees for Ms. Slavet, given that we have found above that she is not entitled to any fees. We have made an exception to this determination, however, for any such work Mr. Burka performed during the post-Briefing Order period because we specifically instructed him to respond to our order concerning such fees. *See* Appendix A, attached to this Opinion and Order (item nos. 124-46, dated from August 26

through September 24, 2015—denoted with asterisks—reflecting the full reimbursement for all hours requested by Mr. Burka during the post-Briefing Order period). In addition, we have not awarded Mr. Burka for any fees incurred for work that involved his discussions with, any emails sent to (or received from), or any work product provided to (or received from), the Government Accountability Project. While the public-interest organization may have been advocating here for whistleblowers at large, it did not show that it had contracted with the appellant to represent her individually in this case, *see Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1375-76 (Fed. Cir. 2002) (noting that attorney fees require an attorney-client relationship), and an amicus curiae is not an adversarial party entitled to attorney fees, *see Carson v. Department of Energy*, 64 F. App'x 234, 239-40 (Fed. Cir. 2003).[8]

¶24 Where applicable, we deducted about one-third of the total hours spent by Mr. Burka on issues in the addendum proceeding pertaining either to his efforts in trying to obtain attorney fees for Ms. Slavet (absent the exception noted above concerning the post-Briefing Order period) or for work done in concert with the Government Accountability Project. We estimated the amount of time that Mr. Burka spent talking about Ms. Slavet's fees with the appellant because Mr. Burka did not provide a minute-by-minute breakdown of what he specifically discussed during their telephone calls, which admittedly would be difficult to do. We also point out that, in reducing these hours, we realize that we sometimes gave Mr. Burka the benefit of the doubt because we only deducted hours if he explicitly mentioned in his final "Summary of Billable Hours," PFR, Tab 20, Exhibit A, that he was working on matters related to Ms. Slavet's fees or on tasks associated with the Government Accountability Project's involvement in the case.

---

[8] The Board may follow a nonprecedential decision of the U.S. Court of Appeals for the Federal Circuit when, as here, it finds its reasoning persuasive. *See, e.g.*, *Erlendson v. Department of Justice*, 121 M.S.P.R. 441, ¶ 6 n.2 (2014).

¶25     Our inquiry does not end here, however.  A further reduction must be made for certain hours not reasonably attributable to this addendum proceeding; namely, the hours that were devoted to the appellant's contention that she should have received the highest performance ranking and associated performance bonus for 2007 instead of the second highest rating.  AFF, Tab 3 at 9-10; Tab 13 at 9-10.  In her addendum initial decision, the administrative judge correctly ruled that a motion for attorney fees is not the proper vehicle for raising such a dispute, which should be raised in a petition for enforcement filed under 5 C.F.R. § 1201.182.  AID at 2, 7; *see Roman v. Department of the Army*, 72 M.S.P.R. 409, 420 (1996), *aff'd*, 129 F.3d 134 (Fed. Cir. 1997) (Table); *Bonggat*, 59 M.S.P.R. at 180.[9]  We therefore conclude that attorney time spent on this issue should not be compensable in this proceeding.  As the present record does not detail the specific number of hours spent by Mr. Burka on this issue, we find that an efficient way to estimate the number of hours devoted to this minor issue is to use the percentage of pages devoted on review to argument on this issue.  By our calculation, Mr. Burka devoted approximately 11% of his argument in the petition for review and reply (4 pages out of 36) to this issue.  Accordingly, we reduce the number of hours for preparation of those two documents by approximately 11% from 71.67 to 63.79 hours (71.67 x .89 = 63.79).[10]  *See* Appendix A, attached to

---

[9] The appellant suggests that it would be appropriate to address this issue in this proceeding, as both parties have submitted evidence and argument on the merits.  PFR File, Tab 3 at 29-30.  We decline to do so.  This is the sort of determination that should be made in the first instance by the administrative judge.  *See Owen v. U.S. Postal Service*, 87 M.S.P.R. 449, ¶ 9 (2000).

[10] We decline to reduce the number of compensable hours attributable to this issue during the regional office proceeding for two reasons.  First, we have no ready mechanism for calculating the number of hours devoted to this issue and a remand for such a minor matter is not warranted.  Second, neither the agency nor the administrative judge advised the appellant during the regional office proceeding that this issue could not be reached in the addendum proceeding on attorney fees.  Should the appellant prevail in a compliance proceeding as to her view of the proper performance

this Opinion and Order (item nos. 88-119, dated from October 14, 2014, through January 14, 2015—denoted in italics—reflecting the 11% reduction for hours requested by Mr. Burka during this timeframe). Coupled with the 92.48 hours spent in the regional office proceeding and the 61.15 hours spent on review after submission of the reply, we find that Mr. Burka reasonably spent 217.42 hours on this addendum proceeding. This brings the lodestar for this addendum proceeding to $76,097.00 (217.42 hours x $350/hour). *See id.* at 4 (Block A is a tally of the total number of hours, 289.3, and the amount of fees that Mr. Burka requested in the addendum proceeding at the $495 per hour rate, equaling $143,203.50. Block B represents the 217.42 hours that we granted Mr. Burka for the addendum proceeding—after making the appropriate deductions—multiplied by the $350 hourly rate, to equal $76,097.00 in attorney fees for that period).

The administrative judge correctly reduced the lodestar attorney fees to account for the appellant's minimal success in this litigation.

¶26    When, as here, a prevailing party makes more than one claim for relief, and the claims involve a common core of facts or are based on related legal theories, the fee determination should reflect the overall relief obtained in relation to the hours reasonably expended. *Guy*, 118 M.S.P.R. 45, ¶ 19. In a case in which the party seeking fees obtains only "partial or limited success," the tribunal awarding fees has discretion to make an equitable adjustment as to what reduction is appropriate. *Hensley*, 461 U.S. at 436-37; *Guy*, 118 M.S.P.R. 45, ¶ 20. That the appellant's success was only "partial or limited" in this case is not in dispute; she claimed that she was subjected to many more retaliatory personnel actions than the two actions found by the Board to be retaliation for her protected whistleblowing. One of these two actions was a $938 performance award and the other, the termination of a telework agreement, already had been resolved through

rating and award for 2007, she then could file a motion for attorney fees for that proceeding.

the grievance process 2 years before the appellant filed this IRA appeal. *Rumsey*, 120 M.S.P.R. 259, ¶¶ 3, 49.

¶27    In doing an equitable adjustment of attorney fees on account of a prevailing party's partial or limited success, the tribunal may adjust the lodestar downward by identifying specific hours that should be eliminated or, in the alternative, reducing the overall award to account for the limited degree of success. *Hensley*, 461 U.S. at 436-37; *Guy*, 118 M.S.P.R. 45, ¶ 20. The former method should be used where it is practicable to segregate the hours devoted to any related but unsuccessful claims, and only when the administrative judge is unable to do so should she impose a percentage reduction. *Guy*, 118 M.S.P.R. 45, ¶ 20. The administrative judge is generally in a better position than the full Board to determine whether it is possible to reduce the time by specific hours. *Id.* The administrative judge in this case determined that it was not practicable to segregate the hours devoted to related but unsuccessful claims. AID at 9-10. Because neither party has questioned that determination on review, it is appropriate to adjust the overall award to account for the appellant's limited success.

¶28    That the Board found that "only" two of the disputed personnel actions were retaliation for protected whistleblowing does not control how much the lodestar should be reduced to account for the appellant's limited success.[11] In

---

[11] In determining that the lodestar attorney fee amount should be reduced by 80% to account for the appellant's limited success in her IRA appeal, the administrative judge concluded that the appellant only was successful as to one personnel action, her 2007 performance evaluation, noting that reinstatement of the appellant's telework arrangement already had been accomplished, by resolution of a grievance, 2 years before the appellant filed her IRA appeal. AID at 10 & n.4. Subsequently, the Board found that the appellant established her IRA appeal claims as to both her 2007 performance evaluation and the cancellation of her telework agreement, notwithstanding the rescission of that cancellation by resolution of the grievance, and that she was entitled to corrective action for both. *Rumsey*, 120 M.S.P.R. 259, ¶ 49.

*Guy*, the Board rejected the notion that, because the appellant prevailed on just one of five personnel actions (a counseling memorandum), she should be awarded a similar fraction of the fees requested. *Guy*, [118 M.S.P.R. 45](#), ¶ 22. The most significant measures of the appellant's success were that the Board made a public finding that the agency engaged in illegal whistleblower reprisal and that it referred the matter to OSC for investigation and possible disciplinary action against the responsible agency officials. *Id.* The Board observed in this regard that the award of attorney fees serves the public interest, in that it may encourage employees and attorneys to pursue remedies for acts of whistleblowing reprisal, thereby discouraging agencies from engaging in such acts. *Id.*

¶29 The appellant disclosed her reasonable belief that the agency failed in its obligation to ensure that recipients of Federal aid use grant money in accordance with the terms of their grants. The Board has found that the agency failed to show by clear and convincing evidence that it did not take retaliatory actions against the appellant for her protected disclosures. An attorney fees award in this appeal serves the public interest in that it may encourage employees and attorneys to pursue remedies for acts of whistleblowing reprisal, thereby discouraging agencies from engaging in misconduct. Not only did the Board make a referral to the Special Counsel regarding its findings of reprisal in this case, both the Special Counsel and members of Congress have pursued investigations regarding the disclosures made by the appellant and other whistleblowers at her agency. PFR File, Tab 3 at 35‑61. Indeed, the appellant has submitted evidence that members of Congress have specifically recognized her efforts in bringing problems to their attention and helping provide the impetus for corrective legislative action. PFR File, Tab 14 at 5-7, 13-15, 28. Under all of the circumstances of this case, we find that an appropriate equitable adjustment for the limited degree of the appellant's success in this IRA appeal is a 60% reduction to the lodestar amount.

¶30 Applying this reduction to the lodestar for the DiMuroGinsburg law firm is straightforward and yields an award of attorney fees in the amount of $14,167.78

($35,419.44 x .4). The award of attorney fees for Mr. Burka must be broken down into two parts: his work on the petition for review of the merits initial decision; and his work on this addendum proceeding. It is appropriate to reduce the lodestar for the former, resulting in an award of $14,000.00 ($35,000 x .4). As discussed above, we also determined it was appropriate to reduce his award on the attorney fee proceeding. *See Guy*, 118 M.S.P.R. 45, ¶ 23; *Driscoll*, 116 M.S.P.R. 662, ¶ 30. The appellant therefore is entitled to an award of $76,097.00 for Mr. Burka's services during the attorney fees proceeding. In total, the appellant is entitled to an award of attorney fees in the amount of $104,264.78 ($14,167.78 for the legal services of the DiMuroGinsberg law firm + $14,000 for the services of Mr. Burka during the merits phase + $76,097.00 for the services of Mr. Burka during the attorney fee proceeding).

The appellant is entitled to a percentage of her incurred costs.

¶31        The administrative judge found that the appellant had directly incurred costs of $14,006.67 in the litigation of her IRA appeal for deposition and hearing transcripts and photocopying. AID at 10. She reduced these costs by 80%, just as she had for allowable attorney fees, resulting in an award of $2,801 for costs. The appellant urges that the Board give her a higher percentage of her costs, just as it did for attorney fees. PFR File, Tab 3 at 31; AFF, Tab 13 at 14‑15. We have considered the appellant's arguments and are not persuaded that the administrative judge's ruling reflects an erroneous finding of material fact or law. We therefore agree with the administrative judge that it is appropriate to award the appellant 20% of her costs, i.e., $2,801.34 ($14,006.67 x .2).

## ORDER

We FORWARD the appellant's claim that she is entitled to a greater performance appraisal and award to the Washington Regional Office for adjudication as a petition for enforcement.

We ORDER the agency to pay the appellant attorney fees totaling $104,264.78 and $2,801.34 in costs. The agency must complete this action no later than 20 days after the date of this decision. *See generally* title 5 of the United States Code, section 1204(a)(2) (5 U.S.C. § 1204(a)(2)).

We also ORDER the agency to tell the appellant and the attorney promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. We ORDER the appellant and the attorney to provide all necessary information that the agency requests to help it carry out the Board's Order. The appellant and the attorney, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant or the attorney that it has fully carried out the Board's Order, the appellant or the attorney may file a petition for enforcement with the office that issued the initial decision on this appeal, if the appellant or the attorney believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant or the attorney believes the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. *See* 5 C.F.R. § 1201.182(a).

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27,

2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.

|   | Date | Hours Requested | Description of Tasks | Page No.[1] | Hours Awarded |
|---|------|-----------------|----------------------|-------------|---------------|
| 1 | 10/28/2013 | 2 hrs. | Combined Tasks | 5 | 15 mins. |
| 2 | 10/29/2013 | 2 hrs. | Combined Tasks | 5 | 1 hr. |
| 3 | 10/30/2013 | 3 hrs. | Combined Tasks | 5 | 3 hrs. |
| 4 | 10/31/2013 | 1 hr. 30 mins. | Communication with Appellant | 5 | 1 hr. 30 mins. |
| 5 | 11/1/2013 | 18 mins. | Communication with Others[2] | 5 | 0 |
| 6 | 11/2/2013 | 30 mins. | Communication with Others | 5 | 0 |
| 7 | 11/4/2013 | 2 hrs. | Combined Tasks | 5 | 1 hr. |
| 8 | 11/6/2013 | 30 mins. | Communication with Appellant | 5 | 30 mins. |
| 9 | 11/7/2013 | 1 hr. | Research | 5 | 1 hr. |
| 10 | 11/15/2013 | 1 hr. | Communication with Others | 5 | 1 hr. |
| 11 | 11/16/2013 | 2 hrs. | Communication with Appellant | 5 | 2 hrs. |
| 12 | 11/17/2013 | 1 hr. 30 mins. | Communication with Appellant | 5 | 1 hr. 30 mins. |
| 13 | 11/19/2013 | 2 hrs. 30 mins. | Combined Tasks | 5 | 0 |
| 14 | 11/20/2013 | 3 hrs. 30 mins. | Combined Tasks | 5 | 1 hr. 24 mins. |
| 15 | 11/22/2013 | 1 hr. 30 mins. | Research | 6 | 0 |
| 16 | 11/23/2013 | 1 hr. | Communication with Appellant | 6 | 0 |
| 17 | 11/25/2013 | 30 mins. | Communication with Appellant | 6 | 0 |
| 18 | 11/27/2013 | 18 mins. | Communication with Appellant | 6 | 18 mins. |
| 19 | 12/2/2013 | 1 hr. 12 mins. | Combined Tasks | 6 | 0 |
| 20 | 12/3/2013 | 30 mins. | Communication with Appellant | 6 | 15 mins. |

---

[1] Page numbers in this column follow the pages in the Petition for Review File, Tab 20, Exhibit A (Summary of Billable Hours).

[2] Communication with others includes discussions between Mr. Burka and the administrative judge, other attorneys, and the Government Accountability Project.

Appendix A

| | Date | Hours Requested | Description of Tasks | Page No.[1] | Hours Awarded |
|---|---|---|---|---|---|
| 21 | 12/4/2013 | 1 hr. 18 mins. | Combined Tasks | 6 | **30 mins.** |
| 22 | 12/5/2013 | 1 hr. 30 mins. | Combined Tasks | 6 | **0** |
| 23 | 12/6/2013 | 3 hrs. 30 mins. | Combined Tasks | 6 | **3 hrs. 30 mins.** |
| 24 | 12/9/2013 | 45 mins. | Communication with Others | 6 | **30 mins.** |
| 25 | 12/13/2013 | 1 hr. 30 mins. | Combined Tasks | 6 | **1 hr.** |
| 26 | 12/14/2013 | 12 mins. | Communication with Appellant | 6 | **12 mins.** |
| 27 | 12/15/2013 | 30 mins. | Combined Tasks | 6 | **30 mins.** |
| 28 | 12/16/2013 | 24 mins. | Communication with Appellant | 7 | **24 mins.** |
| 29 | 12/17/2013 | 24 mins. | Communication with Appellant | 7 | **24 mins.** |
| 30 | 12/18/2013 | 45 mins. | Communication with Appellant | 7 | **45 mins.** |
| 31 | 12/22/2013 | 30 mins. | Communication with Others | 7 | **30 mins.** |
| 32 | 12/23/2013 | 30 mins. | Combined Tasks | 7 | **30 mins.** |
| 33 | 12/24/2013 | 48 mins. | Combined Tasks | 7 | **36 mins.** |
| 34 | 12/26/2013 | 24 mins. | Communication with Appellant | 7 | **24 mins.** |
| 35 | 12/28/2013 | 30 mins. | Communication with Appellant | 7 | **30 mins.** |
| 36 | 12/30/2013 | 1 hr. | Research | 7 | **1 hr.** |
| 37 | 12/31/2013 | 2 hrs. 30 mins. | Combined Tasks | 7 | **2 hrs. 30 mins.** |
| 38 | 1/2/2014 | 1 hr. | Combined Tasks | 7 | **1 hr.** |
| 39 | 1/3/2014 | 42 mins. | Combined Tasks | 7 | **24 mins.** |
| 40 | 1/4/2014 | 5 hrs. 30 mins. | Draft and Completion of Written Documents | 7 | **5 hrs. 30 mins.** |
| 41 | 1/5/2014 | 7 hrs. | Combined Tasks | 8 | **7 hrs.** |
| 42 | 1/6/2014 | 24 mins. | Combined Tasks | 8 | **18 mins.** |
| 43 | 1/7/2014 | 1 hr. 30 mins. | Combined Tasks | 8 | **1 hr.** |
| 44 | 1/8/2014 | 2 hrs. 30 mins. | Combined Tasks | 8 | **2 hrs.** |
| 45 | 1/9/2014 | 3 hrs. | Draft and Completion of Written Documents | 8 | **3 hrs.** |
| 46 | 1/10/2014 | 30 mins. | Combined Tasks | 8 | **30 mins.** |

Appendix A

| | Date | Hours Requested | Description of Tasks | Page No.[1] | Hours Awarded |
|---|---|---|---|---|---|
| 47 | 1/11/2014 | 30 mins. | Communication with Appellant | 8 | **30 mins.** |
| 48 | 1/12/2014 | 18 mins. | Combined Tasks | 8 | **12 mins.** |
| 49 | 1/14/2014 | 18 mins. | Communication with Others | 8 | **6 mins.** |
| 50 | 1/15/2014 | 24 mins. | Communication with Appellant | 8 | **12 mins.** |
| 51 | 1/16/2014 | 48 mins. | Combined Tasks | 8 | **0** |
| 52 | 1/17/2014 | 30 mins. | Combined Tasks | 8 | **15 mins.** |
| 53 | 1/20/2014 | 1 hr. | Combined Tasks | 8 | **0** |
| 54 | 1/21/2014 | 1 hr. | Combined Tasks | 9 | **15 mins.** |
| 55 | 2/9/2014 | 2 hrs. | Review of Decisions | 9 | **2 hrs.** |
| 56 | 2/17/2014 | 30 mins. | Combined Tasks | 9 | **30 mins.** |
| 57 | 2/18/2014 | 12 mins. | Combined Tasks | 9 | **12 mins.** |
| 58 | 2/19/2014 | 1 hr. | Combined Tasks | 9 | **1 hr.** |
| 59 | 2/20/2014 | 1 hr. | Combined Tasks | 9 | **30 mins.** |
| 60 | 2/21/2014 | 45 mins. | Communication with Others | 9 | **0** |
| 61 | 2/22/2014 | 2 hrs. 30 mins. | Draft and Completion of Written Documents | 9 | **1 hr. 15 mins.** |
| 62 | 2/23/2014 | 2 hrs. 30 mins. | Draft and Completion of Written Documents | 9 | **2 hrs. 30 mins.** |
| 63 | 2/24/2014 | 1 hr. 30 mins. | Draft and Completion of Written Documents | 9 | **1 hr. 30 mins.** |
| 64 | 2/25/2014 | 2 hrs. 30 mins. | Draft and Completion of Written Documents | 9 | **2 hrs. 30 mins.** |
| 65 | 2/26/2014 | 2 hrs. 30 mins. | Draft and Completion of Written Documents | 10 | **2 hrs. 30 mins.** |
| 66 | 2/27/2014 | 4 hrs. 30 mins. | Combined Tasks | 10 | **3 hrs. 30 mins.** |
| 67 | 2/28/2014 | 1 hr. 30 mins. | Combined Tasks | 10 | **1 hr.** |
| 68 | 3/1/2014 | 4 hrs. | Draft and Completion of Written Documents | 10 | **4 hrs.** |
| 69 | 3/2/2014 | 1 hr. 30 mins. | Draft and Completion of Written Documents | 10 | **1 hr. 30 mins.** |
| 70 | 3/14/2014 | 18 mins. | Communication with Appellant | 10 | **18 mins.** |
| 71 | 3/20/2014 | 30 mins. | Communication with Others | 10 | **15 mins.** |
| 72 | 3/21/2014 | 36 mins. | Combined Tasks | 10 | **24 mins.** |

Appendix A

| | Date | Hours Requested | Description of Tasks | Page No.[1] | Hours Awarded |
|---|---|---|---|---|---|
| 73 | 3/22/2014 | 30 mins. | Combined Tasks | 10 | **30 mins.** |
| 74 | 3/31/2014 | 1 hr. 30 mins. | Combined Tasks | 10 | **1 hr. 30 mins.** |
| 75 | 4/3/2014 | 24 mins. | Combined Tasks | 10 | **24 mins.** |
| 76 | 4/4/2014 | 1 hr. 30 mins. | Combined Tasks | 10 | **1 hr.** |
| 77 | 4/6/2014 | 12 mins. | Communication with Appellant | 10 | **12 mins.** |
| 78 | 4/7/2014 | 30 mins. | Communication with Appellant | 11 | **20 mins.** |
| 79 | 4/15/2014 | 18 mins. | Combined Tasks | 11 | **18 mins.** |
| 80 | 4/17/2014 | 12 mins. | Combined Tasks | 11 | **12 mins.** |
| 81 | 10/3/2014 | 1 hr. | Combined Tasks | 11 | **1 hr.** |
| 82 | 10/6/2014 | 3 hrs. | Research | 11 | **3 hrs.** |
| 83 | 10/7/2014 | 6 hrs. | Communication with Appellant | 11 | **6 hrs.** |
| 84 | 10/8/2014 | 30 mins. | Communication with Appellant | 11 | **30 mins.** |
| 85 | 10/9/2014 | 30 mins. | Combined Tasks | 11 | **30 mins.** |
| 86 | 10/10/2014 | 1 hr. 30 mins. | Combined Tasks | 11 | **0** |
| 87 | 10/12/2014 | 1 hr. | Combined Tasks | 11 | **1 hr.** |
| *88* | *10/14/2014* | *1 hr. 30 mins.* | *Combined Tasks[3]* | *11* | ***1 hr.*** |
| *89* | *10/16/2014* | *1 hr. 30 mins.* | *Draft and Completion of Written Documents* | *11* | ***1 hr.*** |
| *90* | *10/29/2014* | *4 hrs.* | *Research* | *11* | ***2 hrs. 40 mins.*** |
| *91* | *10/30/2014* | *1 hr. 30 mins.* | *Research* | *11* | ***1 hr.*** |
| *92* | *11/1/2014* | *2 hrs. 30 mins.* | *Research* | *11* | ***1 hr. 40 mins.*** |
| *93* | *11/2/2014* | *2 hrs.* | *Draft and Completion of Written Documents* | *12* | ***1 hr. 20 mins.*** |

---

[3] Italicized items 88-119 are subject to an additional 11% reduction of Hours Awarded. *See* Final Order at 15-16.

Appendix A

|     | Date | Hours Requested | Description of Tasks | Page No.[1] | Hours Awarded |
|-----|------|-----------------|----------------------|-------------|---------------|
| 94  | 11/3/2014 | 3 hrs. | *Draft and Completion of Written Documents* | 12 | **2 hrs.** |
| 95  | 11/4/2014 | 2 hrs. 30 mins. | *Draft and Completion of Written Documents* | 12 | **1 hr. 40 mins.** |
| 96  | 11/5/2014 | 3 hrs. | *Draft and Completion of Written Documents* | 12 | **2 hrs.** |
| 97  | 11/6/2014 | 5 hrs. | *Draft and Completion of Written Documents* | 12 | **3 hrs. 20 mins.** |
| 98  | 11/9/2014 | 3 hrs. | *Draft and Completion of Written Documents* | 12 | **2 hrs.** |
| 99  | 11/12/2014 | 2 hrs. | *Draft and Completion of Written Documents* | 12 | **1 hr. 20 mins.** |
| 100 | 11/13/2014 | 3 hrs. | *Draft and Completion of Written Documents* | 12 | **2 hrs.** |
| 101 | 11/14/2014 | 4 hrs. | *Draft and Completion of Written Documents* | 12 | **2 hrs. 40 mins.** |
| 102 | 11/30/2014 | 3 hrs. 30 mins. | *Draft and Completion of Written Documents* | 12 | **2 hrs. 20 mins.** |
| 103 | 12/1/2014 | 7 hrs. | *Draft and Completion of Written Documents* | 12 | **4 hrs. 40 mins.** |
| 104 | 12/2/2014 | 1 hr. | *Research* | 12 | **40 mins.** |
| 105 | 12/3/2014 | 3 hrs. 30 mins. | *Draft and Completion of Written Documents* | 12 | **2 hrs. 20 mins.** |
| 106 | 12/4/2014 | 1 hr. 30 mins. | *Combined Tasks* | 12 | **1 hr.** |
| 107 | 12/5/2014 | 7 hrs. | *Draft and Completion of Written Documents* | 12 | **4 hrs. 40 mins.** |
| 108 | 12/6/2014 | 5 hrs. | *Draft and Completion of Written Documents* | 12 | **3 hrs. 20 mins.** |
| 109 | 12/7/2014 | 4 hrs. | *Draft and Completion of Written Documents* | 12 | **2 hrs. 40 mins.** |
| 110 | 1/5/2015 | 1 hr. | *Combined Tasks* | 12 | **40 mins.** |
| 111 | 1/6/2015 | 30 mins. | *Communication with Appellant* | 12 | **20 mins.** |
| 112 | 1/7/2015 | 3 hrs. 30 mins. | *Combined Tasks* | 12 | **2 hrs. 20 mins.** |
| 113 | 1/8/2015 | 4 hrs. | *Combined Tasks* | 12 | **2 hrs. 40 mins.** |
| 114 | 1/9/2015 | 5 hrs. | *Combined Tasks* | 13 | **3 hrs. 20 mins.** |

Appendix A

| | Date | Hours Requested | Description of Tasks | Page No.[1] | Hours Awarded |
|---|---|---|---|---|---|
| *115* | *1/10/2015* | *6 hrs.* | *Draft and Completion of Written Documents* | *13* | **4 hrs.** |
| *116* | *1/11/2015* | *2 hrs. 30 mins.* | *Combined Tasks* | *13* | **1 hr. 40 mins.** |
| *117* | *1/12/2015* | *5 hrs.* | *Combined Tasks* | *13* | **3 hrs. 20 mins.** |
| *118* | *1/13/2015* | *7 hrs.* | *Draft and Completion of Written Documents* | *13* | **4 hrs. 40 mins.** |
| *119* | *1/14/2015* | *~2 hrs.* | *Combined Tasks* | *13* | **1 hr. 20 mins.** |
| 120 | 7/29/2015 | 2 hrs. | Draft and Completion of Written Documents | 13 | **2 hrs.** |
| 121 | 7/30/2015 | 30 mins. | Combined Tasks | 13 | **30 mins.** |
| 122 | 8/22/2015 | 2 hrs. | Draft and Completion of Written Documents | 13 | **2 hrs.** |
| 123 | 8/25/2015 | 30 mins. | Combined Tasks | 13 | **30 mins.** |
| *124 | 8/26/2015 | 3 hrs. | Combined Tasks | 13 | **3 hrs.** |
| *125 | 8/27/2015 | 1 hr. 30 mins. | Combined Tasks | 13 | **1 hr. 30 mins.** |
| *126 | 8/28/2015 | 1 hr. 30 mins. | Combined Tasks | 13 | **1 hr. 30 mins.** |
| *127 | 8/29/2015 | 1 hr. 30 mins. | Combined Tasks | 13 | **1 hr. 30 mins.** |
| *128 | 8/30/2015 | 6 hrs. | Combined Tasks | 13 | **6 hrs.** |
| *129 | 8/31/2015 | 30 mins. | Communication with Appellant | 14 | **30 mins.** |
| *130 | 9/4/2015 | 1 hr. 30 mins. | Combined Tasks | 14 | **1 hr. 30 mins.** |
| *131 | 9/5/2015 | 1 hr. 30 mins. | Combined Tasks | 14 | **1 hr. 30 mins.** |
| *132 | 9/8/2015 | 27 mins. | Combined Tasks | 14 | **27 mins.** |
| *133 | 9/10/2015 | 1 hr. 24 mins. | Combined Tasks | 14 | **1 hr. 24 mins.** |

---

* Items 124-46 with asterisks represent time Mr. Burka spent during the post-Briefing Order period. *See* Final Order at 12‑13.

Appendix A

| | Date | Hours Requested | Description of Tasks | Page No.[1] | Hours Awarded |
|---|---|---|---|---|---|
| *134 | 9/11/2015 | 1 hr. 30 mins. | Combined Tasks | 14 | **1 hr. 30 mins.** |
| *135 | 9/12/2015 | 3 hrs. 30 mins. | Combined Tasks | 14 | **3 hrs. 30 mins.** |
| *136 | 9/13/2015 | 1 hr. 30 mins. | Combined Tasks | 14 | **1 hr. 30 mins.** |
| *137 | 9/14/2015 | 2 hrs. | Combined Tasks | 14 | **2 hrs.** |
| *138 | 9/15/2015 | 2 hrs. 30 mins. | Combined Tasks | 14 | **2 hrs. 30 mins.** |
| *139 | 9/16/2015 | 5 hrs. | Draft and Completion of Written Documents | 14 | **5 hrs.** |
| *140 | 9/17/2015 | 6 hrs. 30 mins. | Draft and Completion of Written Documents | 14 | **6 hrs. 30 mins.** |
| *141 | 9/18/2015 | 5 hrs. | Combined Tasks | 14 | **5 hrs.** |
| *142 | 9/19/2015 | 3 hrs. | Combined Tasks | 14 | **3 hrs.** |
| *143 | 9/20/2015 | 18 mins. | Combined Tasks | 14 | **18 mins.** |
| *144 | 9/21/2015 | 30 mins. | Combined Tasks | 14 | **30 mins.** |
| *145 | 9/22/2015 | 3 hrs. 30 mins. | Combined Tasks | 14 | **3 hrs. 30 mins.** |
| *146 | 9/24/2015 | 2 hrs. 30 mins. | Combined Tasks | 15 | **2 hrs. 30 mins.** |

| Block A: Hours and Amount Requested | Total Hours and Fees Requested:  289.3 hrs. or 289 hrs. 18 mins.<br><br>Total Amount Requested:  289.3 hrs.  x  $495/hr.  =  $143,203.50 |
|---|---|
| **Block B: Hours and Amount Awarded** | **Total Hours and Fees Awarded: 225.3 hrs. or 225 hrs. 18 mins.**<br><br>**11% Reduction of Hours Awarded for Work on PFR and Reply: 71.67  x  89%  =  63.79 hrs. or 63 hrs. 47 mins.**<br><br>**Total Hours and Fees Awarded after Reduction: (225.3 – 71.67) + 63.79  =  217.42 hrs. or 217 hrs. 25 mins.**<br><br>**Total Amount Awarded:  217.42 hrs.  x  $350/hr.  =  $76,097.00** |

**Attorneys' Fees Files**

| Pleading No. | Document Name | Tab | Date | Pages | Comments |
|---|---|---|---|---|---|
| 1st | Motion for Attorneys' Fees | 1 | 12/17/13 | 1.5 | Motion for Extension of Time |
| 2nd | Motion for Attorneys' Fees | 3 | 01/08/13 | 17.3 | Appellant's Initial Motion for Attorneys' Fees |
| 3rd | Declaration of Robert Burka | 4 | 01/10/14 | 6.5 | Exhibit A:  Summary of Billing for Burka (all new material, except ¶ 5 has the same substantive information as ¶¶ 14‑15 in Appellant's Declaration on page 6) |
| 4th | Declaration of Jonathan Mook | 5 | 01/10/14 | 17.5 | Exhibits A-D:  DiMuroGinsberg<br>Exhibit A:  Letter of Legal Service Agreement from DiMuroGinsberg to Appellant (2 pp.)<br>Exhibit B:  invoice dated 7/21/11 (5 pp.)<br>Exhibit C:  invoice dated 9/21/11 (4 pp.)<br>Exhibit D:  invoice dated 12/12/11 (3 pp.) |
| 5th | Declaration of Appellant | 6 | 01/12/14 | ~120 | Exhibits A-W:  billing for all three attorneys primarily, of Beth Slavet and briefly, of DiMuroGinsberg and Burka (Burka mentioned 2 paragraphs about fee structure in his previous Declaration (AFF, Tab 4)).<br>Exhibit A:  Performance Award Plan (5 pp.)<br>Exhibit B:  Legal Representation Agreement between Slavet and Appellant (3 pp.) |

**Attorneys' Fees Files**

| Pleading No. | Document Name | Tab | Date | Pages | Comments |
|---|---|---|---|---|---|
| **5th (cont'd)** | Declaration of Appellant | | | | Exhibit C: invoice dated 4/22/09 (2 pp.)<br>Exhibit D: invoice dated 2/13/09 (3 pp.)<br>Exhibit E: invoice dated 6/23/09 (2 pp.)<br>Exhibit F: invoice dated 7/9/09 (2 pp.)<br>Exhibit G: invoice dated 9/29/09 (2 pp.)<br>Exhibit H: invoice dated 1/26/09 (2 pp.)<br>Exhibit I: invoice dated 2/3/10 (2 pp.)<br>Exhibit J: invoice dated 2/3/10 (2 pp.)<br>Exhibit K: invoice dated 4/23/10 (3 pp.)<br>Exhibit L: invoice dated 6/9/10 (3 pp.)<br>Exhibit M: invoice dated 8/9/10 (2 pp.)<br>Exhibit N: invoice dated 8/13/10 (2 pp.)<br>Exhibit O: invoice dated 11/19/10 (2 pp.)<br>Exhibit P: invoice dated 1/10/11 (2 pp.)<br>Exhibit Q: invoice dated 2/16/11 (2 pp.)<br>Exhibit R: invoice dated 9/27/11 (2 pp.)<br>Exhibit S: invoice dated 9/27/11 (2 pp.)<br>Exhibit T: invoice dated 9/27/11 (4 pp.)<br>Exhibit U: invoice dated 10/10/11 (9 pp.)<br>Exhibit V: invoice dated 10/20/11 (17 pp.)<br>Exhibit W: invoice dated 6/30/11 (12 pp.) |

**Attorneys' Fees Files**

| Pleading No. | Document Name | Tab | Date | Pages | Comments |
|---|---|---|---|---|---|
| 6th | Supplement to Motion for Attorneys' Fees | 7 | 01/22/14 | ~119 | Exhibits A‑B, D-E:  Summary of Billing, primarily, of Slavet and DiMuroGinsberg (Exhibit C is missing)<br>Exhibit A:  Legal Representation Agreement (3 pp.)<br>Exhibit B:  invoices dated 4/22/09; 6/23/09; 7/9/09; 9/29/09; 12/10/09; 1/26/10; 2/3/10; 3/8/10; 4/23/10; 5/20/10; 6/9/10; 8/13/10; 11/18/10; 1/8/11; 1/10/11; 2/16/11; 6/29/11; 9/27/11 (three qty.); 10/10/11; 10/20/11 (87 pp.)<br>Exhibit D:  email from Appellant to Slavet regarding "To-Do List" (3 pp.)<br>Exhibit E:  email from Slavet to Rolest Shaub (2 pp.); letter from Slavet re:  "Ethics Undertaking" (3 pp.); letter from Robert Sadler to AJ Clement (2 pp.) |
| 7th | Supplement to Motion for Attorneys' Fees | 11 | 02/05/14 | ~114 | Exhibits A-E:  (Tab 11 is a duplicate of Tab 7, but adds Exhibit C).<br>Exhibit C:  Statement of Escrow Account (10/22/12) (3 pp.) |

**Attorneys' Fees Files**

| Pleading No. | Document Name | Tab | Date | Pages | Comments |
|---|---|---|---|---|---|
| 8th | Refiling of Legible Copy of Supplement, Tab 11 | 12 | 02/25/14 | ~114 | Exhibits A-E:  (Tab 12 is a duplicate of Tab 11, but adds an email in Exhibit B) (email from Crowley, Hoge & Fein, P.C. to Burka (1 pg.)). |
| 9th | Reply to Agency's Response | 13 | 03/02/14 | 22 | Supplemental Declaration of Burka (2 pp.) Summary of Billing (8.5 pp.) (1.5 new pages differing from Summary at Tab 4; ¶ 2 is the same as ¶ 7 bullet 2 in Burka's first declaration) |

**Petition for Review File**

| Pleading No. | Document Name | Tab | Date | Pages | Comments |
|---|---|---|---|---|---|
| **1st** | Request for Extension of Time to File Petition for Review (PFR) | 1 | 10/13/14 | 2 | Declaration of Burka (2.5 pp.) (this pleading contains all new material, except for ¶ 1, which is the same as ¶ 1 in Attorneys' Fees File (AFF), Tab 4) |
| **2nd** | Petition for Review | 3 | 12/08/14 | 23 | Appendices A-F (33 pp.)<br>  Appendix A:      email from Burka to AJ Clement dated 4/17/14 (1 pg.)<br>  Appendix B:      letter from Hon. Carolyn Lerner to Hon. Eric Holder dated 9/16/14 (12 pp.)<br>  Appendix C:      letter from Hon. Charles Grassley to Hon. Robert Listenbee dated 9/5/14 (3 pp.)<br>  Appendix D:      letter from Hon. Peter Kadrik to Hon. Charles Grassley dated 10/28/14 (7 pp.)<br>  Appendix E:      email from Hon. Robert Listenbee to DOJ's Office of Juvenile Justice and Delinquency Prevention dated 10/30/14 (2 pp.)<br>  Appendix F:      Declaration of Burka dated 12/8/14 (16 pp.)<br>Summary of Billing (11 pp.) (2.5 new pages that differ from Summary at AFF, Tab 13, except for ¶ 1, which is the same as ¶ 1 in AFF, Tab 4, and PFR File, Tab 1) |

**Petition for Review File**

| Pleading No. | Document Name | Tab | Date | Pages | Comments |
|---|---|---|---|---|---|
| 3rd | Reply to Agency's Response to PFR | 8 | 01/14/15 | 12.25 | 1st of 3 Supplemental Declarations of Burka (3.5 pp.)<br>Exhibit: Summary of Billing (11.5 pp.) (50% new material, 50% copied from previous declarations; 1 new page differing from previous Summary) |
| 4th | Motion for Leave to File Supplemental Pleading | 10 | 07/30/15 | 2 | Stated purpose: to bring allegedly new evidence not available when record closed |
| 5th | Supplemental Pleading to Submit New Evidence | 14 | 08/25/15 | 5.5 | 2nd of 3 Supplemental Declarations of Burka (1.5 pp.) (all new material) |
| 6th | Response to MSPB's Briefing Order | 18 | 09/08/15 | 3 | Attorney/Client Arbitration Board (ACAB) Submission on Fee Arbitration<br>Exhibit A: ACAB Consent Decision (3 pp.)<br>Exhibit B: Order Granting Respondent's Motion to Stay (3 pp.)<br>Exhibit C: ACAB letter dated 11/14/14 (4 pp.) |
| 7th | Second Response to Briefing Order | 20 | 09/25/15 | 17 | 3rd of 3 Supplemental Declarations of Burka (4 pp.)<br>Appendix: Summary of Billing (12 pp.) (50% new material, 50% copied; 2 new pages differing from previous Summary) |